UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUREATHA THOMAS, personal representative
of the estate of JOSHUA K. CAUSEY

        Plaintiff,

v.                                   Case No. 03-73002
                                   Hon. Victoria A. Roberts

ST. VINCENT & SARAH FISHER CENTER,
BETH OMTVEDT, LORI ANN WRIGHT,
EMILY BERNER, and LYNDA BAKER,

        Defendants.
_____

**ORDER GRANTING IN PART, AND DENYING IN PART,
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion for judgment on the pleadings pursuant to FRCP 12(c). A hearing was held August 16, 2006. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion.

**II.    BACKGROUND**

This case arises out of the tragic beating death of Plaintiff's decedent, Joshua Causey.

Joshua was a "special needs" child who required mental health treatment. He was placed under the supervision of the Family Independence Agency ("FIA") on June 29, 1999 by the Oakland County Family Court. The FIA placed Joshua with his maternal grandmother, Plaintiff, Lureatha Thomas. On September 26, 2000, he was

1

ordered into foster care by the Probate Court because his grandmother could no longer care for him. In August of 2002, Joshua's foster care was transferred to Defendant St. Vincent & Sarah Fisher Center, Inc. ("St. Vincent"). St. Vincent contracts with the FIA to provide foster care services.

On August 26, 2002, St. Vincent placed Joshua in the foster home of Defendant Lynda Baker ("Baker"). Defendant Beth Omtvedt ("Omtvedt") was the social worker assigned to oversee Joshua's care. Defendant Lori Ann Wright ("Wright") was Omtvedt's supervisor. Defendant Emily Berner ("Berner") provided psychological care to Joshua. Omtvedt, Wright, and Berner were employed by St. Vincent.

According to Plaintiff, Berner suspected that Baker was physically abusing Joshua. She notified Omtvedt and Wright of her suspicions, but failed to report them to Michigan Child Protective Services ("MCPS"). Allegedly, Omtvedt and Wright confirmed the existence of physical evidence of child abuse, but did not report it to MCPS.

On March 18, 2003, Joshua died as a result of physical injuries inflicted by Baker. The medical examiner reported: (1) lacerations on the head and face; (2) a fractured left shoulder; (3) multiple blunt force trauma to the brain; and (4) blunt force trauma to the right kidney.

Plaintiff filed a Complaint on May 27, 2003 in Wayne County Circuit Court. An amended Complaint was filed July 14, 2003. Defendants removed to this Court on August 5, 2003. Plaintiff alleges: (1) breach of the contract between the FIA and St. Vincent; (2) violation of MCL §§330.1722(1)(3) and 722.622(f) against all Defendants except Baker; (3) violation of 42 USC §1983 against all Defendants except Baker; (4) violation of MCL §§722.623 and 722.633 against all Defendants except Baker; (5)

2

violation of MCL §§330.1722(1)(3) and 722.622(e) against Baker; and (6) assault and battery against Baker.  On September 25, 2003, default entered against Baker.

The Court stayed the action from January 20, 2004 to November 28, 2005 pending the outcome of criminal actions against Baker, Omtvedt and Wright.  Baker was convicted of involuntary manslaughter.  Criminal charges for failure to report suspected abuse or neglect were dismissed against Omtvedt and Wright on October 12, 2005.

Defendants filed a Motion for judgment on the pleadings on January 13, 2006.

## III.    STANDARD OF REVIEW

The same standard applicable to motions pursuant to FRCP 12(b)(6) is applicable to motions for judgment on the pleadings pursuant to FRCP 12(c). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-512 (6th Cir. 2001)).

"Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)(citation omitted).  The court must construe the complaint in a light most favorable to the plaintiff, and accept all of his factual allegations as true.  *Id.*  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Id.*

## IV.    APPLICABLE LAW AND ANALYSIS

### A.    42 USC §1983 Claim

### 1.    *Respondeat Superior*

Defendants allege Plaintiff failed to state a claim for violation of §1983 against St.

Vincent because the sole claim against St. Vincent is based on *respondeat superior*.

Defendants argue that Plaintiff is required to identify a policy or custom that harmed

Joshua, and Plaintiff fails to do this.

Plaintiff does not allege that St. Vincent had knowledge of the signs of physical

abuse purportedly observed by Omtvedt, Wright, and Berner. Further, the Plaintiff does

not identify any policy, custom, or failure to train its employees that resulted in harm to

Joshua.

Actions under §1983 may not be based on *respondeat superior*. *Berry v. City of

Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994)(citing *Monell v. Dept. of Social Services*, 436

U.S. 658 (1978)). There must be an official policy, custom, or failure to train that is the

moving force behind the constitutional violation. *Id.* Moreover, "[s]upervisory liability

under §1983 cannot attach where the allegation of liability is based upon a mere failure

to act...the supervisors must have actively engaged in unconstitutional behavior."

*Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

Accordingly, Plaintiff does fail to state a claim that St. Vincent violated §1983.

However, Plaintiff asks the Court to allow it to amend its Complaint to allege a policy or

custom. Specifically, Plaintiff claims that St. Vincent employed social workers who were

not properly licensed or trained to identify abuse.

"[L]eave to amend is freely given when justice so requires." *PR Diamonds, Inc.

v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)(quoting Fed.R.Civ.P. 15(a)). However,

leave to amend is properly denied where there is undue delay, bad faith, dilatory motive,

undue prejudice to the opposing party, or futility of the amendment. *PR Diamonds*, 364

F.3d at 698 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). There is undoubtedly

4

delay by Plaintiff in not moving to amend her Complaint sooner.  But, "ordinarily, delay alone will not justify the denial of leave to amend the complaint."  *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005).  Delay must be accompanied by an unwarranted burden on the court or prejudice to the opposing party to be considered undue delay.  *Id.*  Here, there is no indication that Defendants will be prejudiced by an amendment to articulate a custom or policy, and the Court will not experience an unwarranted burden.

Thus, the Court declines to dismiss Plaintiff's §1983 claim against St. Vincent and grants Plaintiff leave to file an Amended Complaint articulating the challenged custom or policy.

### 2.    State Actor

Plaintiff's §1983 claim is the only federal cause of action; her remaining claims arise under state law.

Acting "under color of state law" is a jurisdictional requisite for a §1983 action. *West v. Atkins*, 487 U.S. 42, 46 (1988).  Thus, the Court must first address Defendants' argument that they are not state actors for purposes of §1983.

Section §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Defendants argue that Plaintiff failed to satisfy the "public function test" used to determine if a private party's actions are attributable to the state.  They claim Plaintiff

5

failed to allege that St. Vincent or its agents exercised powers traditionally exclusively reserved to the state.

The Sixth Circuit recognizes three tests to determine if private conduct is attributable to the state: (1) the public function test, which requires that the private entity exercise powers which are traditionally exclusively reserved to the state; (2) the state compulsion test, which requires proof that the state significantly encouraged or somehow coerced the private party to take a particular action so that the choice is really that of the state; and (3) the nexus (or symbiotic relationship) test, which requires a sufficiently close relationship between the state and the private actor so that the action taken may be attributed to the state. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995).

Plaintiff claims that Defendants are state actors under the "joint participant/symbiotic relationship test" (*i.e.* the nexus test), because they perform a joint function with the state. Further, she asserts that Defendants are state actors under the public function test because they perform a function that is statutorily the obligation of the FIA, a state agency.

Defendants did not respond to Plaintiff's arguments in their Reply, but did file supplemental authority: the district court case of *Hare v. Starr Commonwealth Corporation*, W.D. Mich. Case No. 1:03-CV-237 (October 27, 2005), which granted summary judgment to the defendant.

Defendants offer *Hare* as support that they are not state actors under the nexus test. Notably, in ruling on an earlier 12(b)(6) motion filed by the defendants in *Hare*, the Court declined to rule as a matter of law that the nexus test could not be satisfied. *Hare*

6

*v. Starr Commonwealth Corporation*, W.D. Mich. Case No. 1:03-CV-237 (February 4, 2004).

Similarly, this Court finds that the Complaint sufficiently alleges a nexus between the FIA and St. Vincent. Whether Plaintiff can prove the nexus is left for another day.

However, Plaintiff also asserts Defendants are state actors under the public function test because "the Michigan legislature has made the function in question the statutory obligation of the FIA." [Response, p.11]. See *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)("The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain."). "While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Flagg Brothers v. Brooks*, 436 U.S. 149, 158 (1978).

In *Perez v. Sugarman*, 499 F.2d 761 (2nd Cir. 1974), cited by Plaintiff, the court held that two private child care institutions were state actors for purposes of §1983 liability based on both the public function test and the nexus test. Under the public function test, the court found that the private agencies were performing a public function by caring for children that the state was responsible for. *Id.* at 765. Additionally, the court held the plaintiff satisfied the nexus test because New York law specifically contemplated using private facilities to accomplish the state agency's tasks, making the private facilities an integral part of the public operation of providing assistance. *Id.* at 766. The court pointed out the comprehensive statutes that require the private facilities to: consent to approval, visitation and inspection; keep detailed records which can be inspected by the State; make reports to the State on forms provided by the State; and

7

allow the State to remove children from any institution at any time.

Michigan enacted a similar statutory scheme.  It allows the FIA to utilize private facilities to provide foster care, subject to regulation.

In *Wolotsky*, *supra*, the court addressed the plaintiff's argument that the Supreme Court introduced a new state actor test in *West v. Atkins*, 487 U.S. 42 (1988).  The court declined to decide whether *West* introduced a new test, because it found that even if it did, it was not helpful to the plaintiff.  However, Plaintiff cites *West* in her Response, and it is analogous to this case.

In *West*, the Court found that a physician under contract with the state to provide medical services to state prisoners, even on a part-time basis, was a state actor.  The Court held "[w]hether a physician is on the state payroll or is paid by contract, **the dispositive issue concerns the relationship among the State, the physician, and the prisoner**.  Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."  *Id.* at 56 (emphasis added).  The Court concluded, "[t]he State bore an affirmative obligation to provide adequate medical care to [the prisoner]; the State delegated that function to [the contracted physician]; and [the physician] voluntarily assumed that obligation by contract."  *Id.*  The Court concluded the physician was a state actor for purposes of §1983.

*West* is controlling here.  The Court noted in *West* that the plaintiff could only go to the physician authorized by the state to obtain the medical care the state was

8

2:03-cv-73002-VAR   Doc # 33   Filed 08/21/06   Pg 9 of 23   Pg ID 838

obligated to provide.  *Id.* at 55.  Similarly, Joshua was a ward of the state; the state was obligated to provide for his welfare; and, he was bound to accept the placement and supervision offered him by Defendants.  There is no indication that the holding in *West* is limited to the facts of that case or to prisoners specifically.

Notably, in his concurrence, Justice Scalia wrote that a "physician who acts on behalf of the State to provide needed medical attention to a person involuntarily in state custody (**in prison or elsewhere**) and prevented from otherwise obtaining it, and who causes physical harm to such a person by deliberate indifference, violates the Fourteenth Amendment's protection against the deprivation of liberty without due process."  *Id.* at 58 (emphasis added).  See also *Lintz v. Skipski*, 25 F.3d 304, 305 (6th Cir. 1994)(citing cases in other circuits where court analogized children in foster care to the mental institution and prison settings).

Here, Defendants performed a function statutorily reserved to the state.  Joshua had no choice concerning the placement and supervision he received.  Accordingly, under *West* and *Perez*, Defendants satisfy the public function test and are state actors.

### 3. Absolute Immunity

Defendants argue they are entitled to absolute immunity from Plaintiff's 42 USC §1983 claim.

Plaintiff's §1983 claim is that Defendants were deliberately indifferent to the signs of physical abuse Joshua exhibited; consequently, they failed to fulfill their obligation to protect him from abuse and neglect.

The Sixth Circuit has held that "due process extends the right to be free from the

9

infliction of unnecessary harm to children in state-regulated foster homes." *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir. 1990).  See also *Lintz*, 25 F.3d at 305.  Nonetheless, Defendants contend that they are entitled to absolute immunity against Plaintiff's substantive due process claim.

Defendants rely upon *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984), where the court held that social workers and other persons whose functions are "integral parts of the judicial process" are entitled to absolute immunity based on quasi-judicial immunity.  In *Kurzawa,* the plaintiffs brought a §1983 claim after regaining custody of their child from the Department of Social Services ("DSS").  The defendants included several social workers, a psychologist, a psychiatrist and an attorney who functioned as guardian *ad litem* for the child.  The court held that all of the individuals were integral parts of the judicial process because their actions were done to assist the court in determining what best serves the interests of the child.  The court held the individuals need to "be able to function without the worry of possible later harassment and intimidation from dissatisfied parents," in order to perform their duties.  *Id.* at 1458.

The court distinguished the functions entitled to immunity in *Achterhof v. Selvaggio*, 886 F.2d 826 (6th Cir. 1989).  The court stated that functions that are prosecutorial, judicial or otherwise intimately related to the judicial process are entitled to absolute immunity, while administrative and investigative functions are not.  *Id.* at 829-830.

In *Achterhof*, the court found the decision to open a case of child abuse - although it may lead to criminal prosecution - is merely an investigative or administrative

10

function not entitled to absolute immunity.[1]  Particularly, the court noted that opening a

case was "investigatory work of the most ordinary kind since it was mandated by the

statute." *Id.* at 830.  The social worker, without discretion to do otherwise, opened a

case following a report of suspected abuse from the child's school.  Additionally, the

court found that the social worker's placement of the child's father on a central registry

as a child abuser was administrative and not entitled to absolute immunity.  *Id.* at 831.

More recently, in *Rippy v. Hattaway*, 270 F.3d 416 (6th Cir. 2001), the court

further defined the functions that are entitled to absolute immunity.  The court held that

"social workers who initiate proceedings related to the welfare of a child are entitled to

absolute immunity while functioning in roles intimately associated with the judicial phase

of proceedings." *Id.* at 422.  The court found that social workers are entitled to absolute

immunity for claims arising out of the appointment of guardians *ad litem*; failures to

ensure representation of the child; failure to inform the parents of their right to counsel;

the content of their investigations and recommendations done to aid the court in making

removal determinations; and, for determining the requirements of the plan under which

the child will be returned.  However, the court found that a social worker is not entitled to

absolute immunity where she promulgates and enforces her own policies.

The question in this case is whether the alleged failure by the Defendant social

workers to protect Joshua from unnecessary harm while in Baker's care was done while

the social workers were functioning in a capacity that entitles them to absolute

---

[1]The court noted that "[o]fficial conduct not entitled to absolute immunity can at
most enjoy the protection of qualified immunity."  *Achterhof*, 886 F.2d at 829.  However,
Defendants do not argue qualified immunity in their Motion.

11

immunity.  Joshua was in Baker's care after his grandmother could no longer care for him.  Because he was in the custody of the state (via St. Vincent) it had an affirmative obligation to prevent the infliction of unnecessary harm.  See *Meador, supra.*

Supervision here of Joshua was not judicial, prosecutorial, or otherwise "intimately associated with the judicial phase of proceedings."  Supervision was required based on an independent obligation to keep him free from harm.  Unlike the investigation in *Rippy* that the court held was a judicial function, the monitoring in this case was not done to assist the court in deciding the best interests of Joshua, but was part of routine monitoring to assure that the state was upholding its duty to provide a safe environment for him.

Plaintiff alleges the social workers violated Joshua's substantive due process right to be free from unnecessary harm when they failed to report signs of abuse and failed to take steps to protect him from the abuse they were aware of.  Because the ongoing requirement that the state supervise Joshua and protect him from harm while he was in state regulated foster care was not "intimately related to a judicial proceeding" Defendants are not entitled to absolute immunity.

### 4.    Actual Knowledge

Defendants claim Plaintiff failed to state a claim of violation of §1983 because she did not allege they had actual knowledge that Joshua was being abused.

Contrary to Defendants assertions, Plaintiff alleged in her Complaint that: (1) Omtvedt repeatedly noticed signs and symptoms of physical abuse but did nothing to protect Joshua [Complaint, ¶22]; (2) Wright became aware of evidence of physical abuse and did nothing to protect him [Complaint, ¶23]; (3) Berner found evidence of

12

physical abuse on Joshua but did not report it to MCPS for investigation [Complaint,

¶¶24-26]; (4) Omtvedt and Wright <u>were informed of Berner's findings</u> but did not report it

to MCPS or do anything to protect him [Complaint, ¶¶27-28]; and (5) when Joshua was

placed in Baker's home, she was <u>already suspected of abusing other foster children</u>

[Complaint, ¶56].

Taking the facts alleged by Plaintiff to be true, and construing the Complaint in a

light most favorable to her, Plaintiff's allegations are sufficient to state a §1983 claim

that Omtvedt, Wright, and Berner were "deliberately indifferent to a known injury <u>or risk</u>"

to Joshua. *Eugene D. v. Karman*, 889 F.2d 701, 705 (6th Cir. 1989)(emphasis added).

## B.   Immunity From State Law Claims

Defendants assert that Plaintiff's state law claims must fail because they are

entitled to absolute immunity based on their status as social workers and a foster

agency.

The seminal case in Michigan regarding social worker immunity is *Martin v.*

*Children's Aid Society*, 215 Mich.App. 88 (Mich.App. 1996).  In *Martin*, the plaintiffs'

infant daughter was removed from their custody by the DSS after hospital tests revealed

numerous broken bones in various stages of healing.  The DSS placed the child with

Children's Aid Society ("CAS").  CAS contracted with the DSS to provide services to

neglected and abused children.  CAS placed the child in a foster home.  Following

several years and many hearings, the parents regained custody after submitting

medical evidence that the child suffered from a disease that caused her injuries.

The parents filed an action alleging negligence, breach of statutory and

contractual duties, bad faith and violation of constitutional rights against CAS and

13

various social workers for CAS and the DSS.  The trial court granted summary disposition to CAS for the plaintiffs' failure to state a claim and no genuine issue of material fact.  The trial court declined to grant summary disposition on the basis of absolute immunity.

On appeal, the *Martin* court held that CAS was entitled to absolute immunity. The court noted that social workers play an important role in court proceedings "to determine when to remove a child from the home and how long to maintain the child in foster care."  *Martin*, 215 Mich.App. at 96.  Further, the court recognized that in order to do their difficult job, "social workers must be allowed to act without fear of intimidating or harassing lawsuits by dissatisfied or angry parents."  *Id.*  However, the court noted that it did not intend to create "**blanket** absolute immunity."  *Id.* at n.5.  The court stated that the immunity granted was "limited to the facts of this case, in which the close oversight of the social worker's placement recommendations by the probate court is especially noteworthy."  *Id.*  The court affirmed the grant of summary disposition but stated the trial court incorrectly denied CAS absolute immunity.

In *Spikes v. Banks*, 231 Mich.App. 341 (Mich.App. 1998), the plaintiff became a ward of the state when she was 13.  She was placed with defendant Teen Ranch, Inc., which in turn placed her in a foster home with defendant Annie Banks ("Banks").  While residing with Banks, the plaintiff was sexually assaulted by Banks' 23 year old nephew. The nephew impregnated her.  The plaintiff's complaint alleged Teen Ranch and Banks[2]

---

[2]Banks received summary disposition from the trial court because she claimed her actions involved an exercise of reasonable parental authority over the plaintiff under MCL 722.163.  However, the appellate court reversed the grant of immunity to Banks.

were negligent in their care of her.  The trial court granted summary disposition to Teen Ranch, relying on the absolute liability created in *Martin, supra*.

Without addressing the limiting language in Martin and without analysis, the *Spikes* court agreed with the trial court that *Martin* was binding.  It held that Teen Ranch was entitled to "absolute immunity from tort liability arising from its placement and supervision of plaintiff."  *Spikes*, 231 Mich.App. at 347.

In *Beauford v. Lewis*, 711 N.W.2d 783 (Mich.App. 2005), the court again granted absolute immunity to a social worker.  In *Beauford*, the plaintiff's daughter was removed from her custody pending proceedings to terminate her parental rights after possible sexual abuse of the child by the plaintiff's husband.  Following lengthy custody proceedings - in which the defendant social worker investigated and subsequently recommended termination of the plaintiff's rights - the plaintiff regained custody of her daughter.  The plaintiff sued the social worker, and the claim was summarily dismissed pursuant to *Martin*.

The plaintiff argued the trial court erred in granting immunity under *Martin*, because *Martin* was limited to its particular facts (close oversight by the probate court). Nonetheless, the *Beauford* court held that the "close oversight" referred to in *Martin* was satisfied in a situation in which the probate court reviewed the defendant social worker's findings and recommendations, and took action as a result, at proceedings in which parents are able to contest the recommendations.  *Beauford*, 711 N.W.2d at 786.  The court held that the defendant "acted as an agent to aid the court in its decision regarding termination of plaintiff's parental rights, and her investigation and recommendations were subject to review by the family division as part of its proceedings...[t]he court's

15

failure to address the course and conduct of [her] investigation is irrelevant." *Beauford*, 711 N.W.2d at 786-787.

The issue here is the extent to which absolute immunity, as announced and as limited in *Martin* and *Beauford*, precludes Plaintiff's state law claims.

Plaintiff brings several state law claims against St. Vincent and Omtvedt, Berner, and Wright (the "social workers").

### 1.      Breach of Contract

Plaintiff alleges breach of the contract between St. Vincent and the FIA because St. Vincent failed to ensure Joshua's health, safety and welfare while in foster care. Essentially, Plaintiff challenges Defendants' supervision of Joshua while in St. Vincent's care.  Plaintiff claims Joshua was a third party beneficiary of the contract.  Defendants do not dispute that assertion, but argue that they are immune from contract actions on the basis of the absolute immunity created in *Martin*.[3]  Plaintiff contends absolute immunity does not extend to contract claims.

Plaintiff is incorrect.  In *Martin*, the court described social worker immunity as immunity from "a civil lawsuit" and "civil suit."  *Martin*, 215 Mich.App. at 97-99.  In *Beauford*, the court described it as immunity from "civil litigation."  *Beauford*, 711 N.W.2d at 786.  Although *Spikes, supra*, only refers to immunity from tort liability, the

---

[3]Defendants also assert the claim fails because agency agreements do not create rights in third parties.  However, drawing inferences in favor of Plaintiff, the Court cannot conclude the agreement between the FIA and St. Vincent is an agency agreement because an agency agreement requires: (1) that the agent have the power to alter legal relations between the principal and third parties; (2) the agent must be a fiduciary of the principal in matter within the scope of the agency; and (3) the principal must have the right to control the agent's conduct of matters entrusted to it.  *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 219 (6th Cir. 1992).

16

only claims in that case were for negligence.  If Michigan courts intended to limit social

worker liability to tort claims only, it would have said so.  See also *Richmond v. Catholic*

*Social Services*, 2004 WL 1416266, *4 (Mich.App. 2004)(holding that implied contract

and third party beneficiary claims are subject to absolute immunity under *Martin*).

Social worker absolute immunity does extend to contract claims.

However, it would be premature to dismiss the claim at this juncture, since the

claim could survive if Defendants were not able to prove the "close oversight"

requirement of *Martin*.  That involves questions of fact not properly before the Court.

Accordingly, Defendants are not entitled to dismissal of the contract claim.

### 2.    Violation of MCL 330.1722(1) and (3)

Plaintiff claims Defendants violated MCL 330.1722(1) and (3) of the Mental

Health Code by failing to protect Joshua from abuse and neglect.  MCL 330.1722

provides:

> (1) A recipient of mental health services shall not be subjected to abuse or
> neglect.
>
> (2) The department, each community mental health services program,
> each licensed hospital, and each service provider under contract with the
> department, community mental health services program, or licensed
> hospital shall ensure that appropriate disciplinary action is taken against
> those who have engaged in abuse or neglect.
>
> (3) A recipient of mental health services who is abused or neglected has a
> right to pursue injunctive and other appropriate civil relief.

It is not necessary to decide if social worker absolute immunity applies to this

claim, because the statute does not apply.  First, Joshua is not a "recipient" for

purposes of the Mental Health Code.  Recipient is defined as "an individual who

receives mental health services *from the department [of Community Health], a*

17

*community mental health services program[4], or a facility or from a provider that is under contract with the department [of Community Health] or a community mental health services program.*"  MCL 330.1100c(12)(emphasis added).

Joshua received psychological care from Berner, an employee of St. Vincent.  St. Vincent contracted with the FIA, not the Department of Community Health.  Plaintiff does not allege that Joshua received mental health services from the entities listed in MCL 330.1100c(12).

Second, although Plaintiff attempts to incorporate the definition of "child abuse" provided in MCL 722.622(f) of Child Protection Law into 330.1722, the Mental Health Code has its own definition of abuse.  Abuse is defined as:  "nonaccidental physical or emotional harm to a recipient...*that is <u>committed by </u>an employee or volunteer of the department [of Community Health], a community mental health services program, or a licensed hospital or by an employee or volunteer of a service provider under contract with the department, community mental health services program, or licensed hospital.*"  MCL 330.1100a(2)(emphasis added).  The Code sets forth a similar definition for neglect.  See MCL 330.1100b(18).

Plaintiff does not allege that the abuse or neglect was committed by an employee or volunteer of any of the above referenced entities.  Accordingly, Plaintiff fails to state a claim that Joshua was abused or neglected within the meaning of the Mental Health Code and the claim is dismissed.

_____

[4]A community mental health services program is defined as "a program operated under chapter 2 [MCL 330.1200a et seq.] as a county community mental health agency, a community mental health authority, or a community mental health organization.  MCL 330.1100a(16).

### 3.      Violation of MCL 722.623 and MCL 722.633

Plaintiff claims Defendants violated MCL 722.623 and MCL 722.633 by failing to

report suspected abuse and neglect to Michigan Child Protective Services ("MCPS").

> (1) An individual is required to report under this act as follows:
>
> (a) A...psychologist...licensed professional counselor, certified social
> worker, social worker, social work technician...or regulated child care
> provider who has reasonable cause to suspect child abuse or neglect shall
> make immediately, by telephone or otherwise, an oral report, or cause an
> oral report to be made, of the suspected child abuse or neglect to the
> department.  Within 72 hours after making the oral report, the reporting
> person shall file a written report as required in this act.  If the reporting
> person is a member of the staff of a hospital, agency, or school, the
> reporting person shall notify the person in charge of the hospital, agency,
> or school of his or her finding and that the report has been made, and
> shall make a copy of the written report available to the person in charge.
> A notification to the person in charge of a hospital, agency, or school does
> not relieve the member of the staff of the hospital, agency, or school of the
> obligation of reporting to the department as required by this section.  One
> report from a hospital, agency, or school shall be considered adequate to
> meet the reporting requirement.  A member of the staff of a hospital,
> agency, or school shall not be dismissed or otherwise penalized for
> making a report required by this act or for cooperating in an investigation.

MCL 722.623(1)(a).

> (1) A person who is required by this act to report an instance of suspected
> child abuse or neglect and who fails to do so is civilly liable for the
> damages proximately caused by the failure.

MCL 722.633(1).

Despite the unambiguous language of the statute, Defendants claim they are

entitled to social worker absolute immunity for claims of failure to report child abuse

under MCL 722.633, pursuant to *Martin*.  There are no cases holding that absolute

immunity extends to violations of MCL 722.633.

Prior to the creation of absolute immunity in *Martin*, Michigan courts held that

19

common-law and governmental immunity do not apply where social workers fail to report suspected abuse or neglect in violation of statute. *Williams v. Coleman*, 194 Mich.App. 606, 619-620 (Mich.App. 1992).

In *Williams*, the plaintiff brought an action against the social workers for violation of MCL 722.623 and 722.633. The defendants argued they were entitled to governmental immunity. The court held "[t]he statute prescribes that the social workers and others are required to report suspected child abuse or neglect. The reporting mechanism is designated, and the listed reporters are assured of immunity for good-faith reporting and are informed of the potential liabilities of failing to report. The list of persons required to report includes many persons who could be government employees. By providing immunity for reporting, the Legislature by specific implication negated other forms of immunity these persons might have." *Williams*, 194 Mich.App. at 613-614.

The subsequent creation in *Martin* of absolute immunity for civil claims did not negate the holding announced in *Williams*. Social workers are specifically listed in MCL 722.623 among those required to report suspected abuse. While the legislature explicitly included immunity for good-faith reporting, it did not exclude any group from liability for failure to comply with the statute.

*Martin* created absolute immunity for social workers so that they could be free from the fear of harassing lawsuits and otherwise perform their duties. Without immunity, social workers may be afraid to remove children from their homes or to make recommendations adverse to parents. The result of this fear might be an increased risk of harm to children because they would be left in potentially dangerous situations.

20

Holding social workers liable for violation of MCL 722.633 would not have the same effect. Social workers would only be subject to civil liability where they fail to report suspected abuse. There is no fear of harassing litigation for social workers who incorrectly report suspected abuse because the legislature granted immunity for good-faith reports.

As aptly noted in *Williams*, "the social workers may have made a series of decisions, but the latitude of choices they had was narrow: Do we report suspected child abuse or not? The actual decision concerning the validity of the information was not theirs to make, especially in light of the information regarding the family they then possessed. That was the decision of the protective services workers to whom they were required to report. Consequently, immunity is not applicable under these facts." 194 Mich.App. at 619-620.

Accordingly, Berner, Omtvedt, and Wright are not entitled to social worker absolute immunity for their alleged violation of MCL 722.623 and MCL 722.633.

### C.    Proximate Cause

Defendants allege that Plaintiff failed to state any claim for the abuse suffered by Joshua because Baker's intervening criminal conduct precludes a finding of proximate cause.

The cases cited by Defendants are inapposite. *Valcaniant v. Detroit Edison Company*, 470 Mich. 82 (2004) and *Buczkowski v. McKay*, 441 Mich. 96 (1992) both addressed whether the defendant owed a legal duty to the plaintiff based on the foreseeability of harm, not whether an intervening act precluded liability. In *People v. Schaefer*, 473 Mich. 418 (2005), the Court addressed proximate cause in the context of

21

criminal charges.  Nonetheless, the *Schaefer* Court noted that "[t]he linchpin in superseding cause analysis...is whether the intervening cause was foreseeable based on an objective standard of reasonableness...[i]f it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause." *Id.* at 437.

"An intervening cause is not an absolute bar to liability if the intervening event is foreseeable, though negligent or even criminal, provided the prior negligence is still operating.  The question of whether an intervening act of negligence is a superseding cause, relieving the defendant of liability, is a question for the jury." *Williams v. Johns*, 157 Mich.App. 115, 120 (Mich.App. 1987)(citations omitted).

Consequently, based on Plaintiff's allegations and the applicable standard of review, the Court will not dismiss Plaintiff's claims.  A jury must determine whether Baker's criminal acts were a superseding cause of harm to Joshua, relieving these Defendants of liability.

**V.      CONCLUSION**

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion to dismiss.  The Court also *sua sponte* **DISMISSES** the claim for violation of MCL 330.1722 against Baker.

The remaining claims are:

(1)     violation of 42 USC §1983 against Omtvedt, Wright and Berner;

(2)     breach of contract against St. Vincent & Sarah Fisher Center; and,

(2)     violation of MCL 722.623 and MCL 722.633 against Omtvedt, Wright and Berner.

**IT IS SO ORDERED.**

22

S/Victoria A. Roberts
**Victoria A. Roberts**
**United States District Judge**

**Dated:  August 21, 2006**

> The undersigned certifies that a copy of
> this document was served on the
> attorneys of record by electronic means or
> U.S. Mail on August 21, 2006.
>
> S/Carol A. Pinegar
> Deputy Clerk